T.C. Memo. 1997-539


UNITED STATES TAX COURT


KENNETH C. & BECKY J. THEISEN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9759-96.                    Filed December 8, 1997.


Rory Alan Boatright, for petitioner.

Franklin R. Hise, for respondent.


MEMORANDUM OPINION

PAJAK, Special Trial Judge:  This case was heard pursuant to
section 7443A(b)(3) of the Code and Rules 180, 181, and 182.  All
section references are to the Internal Revenue Code in effect for
the years in issue.  All Rule references are to the Tax Court
Rules of Practice and Procedure.

Respondent determined deficiencies in petitioners' Federal income taxes as follows:

| Year | Deficiency |
|------|-----------|
| 1992 | $3,160 |
| 1993 | 4,240 |

In the notice of deficiency, respondent disallowed petitioners' deductions for Schedule C expenses incurred in connection with their Amway activity because they were not ordinary and necessary expenses within the meaning of section 162. By answer, respondent raised the issue that petitioners did not intend to make a profit from their Schedule C activities for 1992 and 1993. In the answer, respondent also requested the Court to find that the deficiencies in tax for 1992 and 1993 were subject to the accuracy-related penalties under section 6662. Respondent's answer further asserted that petitioners were negligent and intentionally disregarded the rules or regulations under the Internal Revenue Code in filing their 1992 and 1993 Federal income tax returns.

Respondent has conceded that petitioners did not have a substantial understatement of income tax for 1992 and 1993 under section 6662(d). As a result of the concession, the parties limited the issue of penalties to those under section 6662(b)(1) as follows:

| Year | Penalty |
|------|---------|
| 1992 | $632 |
| 1993 | 848 |

The issues remaining for decision are: (1) Whether respondent proved that petitioners did not engage in their Amway activity for profit within the meaning of section 183; (2) if not, whether petitioners proved they are entitled to deduct expenses in carrying out the Amway activity as ordinary and necessary expenses under section 162; and (3) whether respondent proved that petitioners are liable for the accuracy-related penalties under section 6662(b)(1).

The facts as stipulated are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioners resided in Austin, Texas, at the time they filed their petition. For convenience and clarity, we have combined the findings of fact and opinion.

Petitioner Kenneth C. Theisen (petitioner) was employed full time by the Internal Revenue Service (Service) as a revenue agent during the years in issue. He had been so employed for the past 10 years. He has a Bachelor of Science in Accounting and is a Certified Public Accountant. During 1992 and 1993, petitioner Becky J. Theisen was employed as a travel agent. Petitioners were the parents of two children.

Petitioners had been Amway distributors in 1979 and 1980. Petitioners again became Amway distributors in 1991, and were distributors during 1992 and 1993, the years in issue, and at

least up to the date of trial. During the years in issue, petitioner claimed that he participated in the Amway activity on an average of 15-20 hours per week. Mrs. Theisen claimed that she participated in the Amway activity with her husband on an average of 4 hours per week. She stated that her primary function was doing the paperwork and visiting with wives of prospective distributors of Amway products.

Amway is a supplier of various household products. It sells these products via marketing through distributors, such as petitioners. Distributors purchase the products for personal use, as well as for resale to customers and downline distributors (also known as "downliners"). Distributors are encouraged to recruit others to become downline distributors. The Amway system is based on a pyramid system whereby a distributor's direct and indirect sales are rewarded with bonuses.

Petitioners filed joint Federal income tax returns for 1992 and 1993. On Schedules C of these returns, petitioners claimed net losses in the amounts of $11,074 and $14,881, for 1992 and 1993, respectively, from Theisen Enterprises.

Theisen Enterprises is petitioners' sole proprietorship. Petitioners claim that Theisen Enterprises is engaged in the business of selling Amway products. On Schedule C of each return, line B, "principal business code", petitioners listed "3012", which number represents "Selling door to door, by

telephone or party plan, or from mobile unit".  On their Federal income tax returns for the years in issue, petitioners did not disclose that they or Theisen Enterprises were engaged in an Amway activity.  In fact, on both returns, line A of Schedule C, "Principal business or profession, including product or service", was left blank.

Deductions are a matter of legislative grace.  New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Respondent's determinations are presumed correct, and petitioners bear the burden of proving otherwise.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  However, respondent bears the burden for any new matter pleaded in the answer.  Rule 142(a).  Petitioner made a motion to that effect as to the section 183 issue, and the Court granted it.  Respondent acknowledged the burden of proof as to the section 6662(b)(1) issue for both years.

Section 183(a) disallows any deductions attributable to activities not engaged in for profit except as provided under section 183(b).  Taxpayers need not have a reasonable expectation of profit.  However, the facts and circumstances must demonstrate that they entered into the activity, or continued the activity, with the actual and honest objective of making a profit.  Taube v. Commissioner, 88 T.C. 464, 478 (1987); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702

F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs. The taxpayer's motive to make a profit must be analyzed by looking at all the surrounding objective facts. Dreicer v. Commissioner, supra at 645. These facts are given greater weight than to petitioners' mere statement of intent. Dreicer v. Commissioner, supra.

Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of relevant factors to be considered in deciding whether an activity is engaged in for profit. These factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs. These factors are not applicable or appropriate in every case. Abramson v. Commissioner, 86 T.C. 360, 371 (1986).

After a review of the record, we conclude that respondent has carried the burden of proving that petitioners lacked the requisite profit objective within the meaning of section 183 in

operating their Amway activity. Petitioners' Amway activity resulted in a net loss for taxable years 1992 and 1993. Although it is not unusual for a business to incur losses in its early years, we believe that petitioners never had any intention of making a profit from this activity.

Petitioners contend that their Amway activity was motivated by profit. Petitioners averred that they carried on their Amway activity in a businesslike manner, maintained complete and accurate financial records and books, studied the market and strategies of others, attended seminars, and conformed their sales techniques with more successful approaches. However, the record indicates that petitioners did not operate in a businesslike manner. Petitioners did not have a business plan, nor did they conduct a break-even analysis. Petitioners had no budget.

Petitioner candidly admitted in court that one of the major benefits of being an Amway distributor was that such distributors could purchase various products for personal use at a discount of 15 to 50 percent, if not more. He further stated that the opportunity to purchase discounted products was a benefit. His testimony evidenced that petitioners used their Amway distributorship for their own personal financial gain. He stressed this benefit when he made sales pitches in his attempts to recruit potential downliners.

When questioned whether his downliners sell the products, petitioner testified:

> Generally, no.  The way the plan is written is, you're taught to purchase things from yourself for yourself, and you get other people -- say, Look.  Just change your buying habits.  Don't go to HEB.  Don't go to Eckerd's.  Don't go to Sam's.  You get access to all these products.  Change your buying habits.  Buy things for yourself.

Petitioner also conceded that petitioners' personal purchases were more than the purchases they acquired for resale to other customers or downline distributors.  Specifically, petitioner admitted that in 1992 he bought $4,500 of products for personal use and $3,262 of products for other purposes.  For 1993, he conceded he bought $10,729 of products for personal use and $4,991 of products for other purposes.

Petitioners have consistently reported tax losses on their Amway activity.  Although only taxable years 1992 and 1993 are at issue here, petitioners have claimed net losses from their Amway activity for taxable years 1991 through 1995, of $2,745.06, $11,073.51, $14,881, $13,008, and $11,681, respectively.

Petitioner could not explain with any detail or certainty how or when the Amway activity would become profitable.  He could not explain how many downliners he needed to recruit in order to realize a profit.  Moreover, he stated that when downliners purchased products through petitioners the purchases were at

cost.  Consequently, any opportunity for petitioners to make a profit was limited to Amway bonuses.

Petitioners claimed car and truck expenses in excess of the gross receipts reported on their 1992 and 1993 Schedules C.  The parties agreed that petitioners' 1992 vehicle expenses attributed by petitioner on the returns to business use was 57 percent of the total mileage.  In 1993, petitioners purchased a new vehicle and claimed 70 percent of its expenses as business expenses on the return.  Petitioners' 1992 ledger shows that 50 percent of their telephone bill was attributed to business use, and the other 50 percent was for personal use.  In 1993, that ratio increased to 80 percent business use and 20 percent personal use. Petitioner could not explain why there were such substantial increases in vehicle and telephone expenses without a concomitant increase in revenue.

Petitioners contend that their detailed ledger of income and expenses supports their position that their Amway activity was motivated by profit.  Although a detailed ledger of income and expenses is relevant, it appears that petitioners maintained these records for substantiation purposes rather than to monitor the income and expenses of their Amway activity.  As stated repeatedly on the record, substantiation is not an issue in this case.

Petitioners' record-keeping is also not complete and accurate. In light of his position as a revenue agent for the Service, petitioner must have realized that the absence of gross income would tend to indicate that the activity lacked any profit motive. We believe that petitioner intentionally failed to include the cost of motivational tapes in the calculation of costs of goods sold in order to avoid disclosing a negative gross income on the Schedule C for both years. Petitioner admitted that if these purchases had been included in costs of goods sold, petitioners would not have had any gross income for those years. We agree with respondent that these purchases should have been included in the costs of goods sold. Accordingly, we find that petitioners did not have gross income in 1992 or 1993.

We have considered petitioners' other arguments and find that they are without merit.

On this record, we find that petitioners did not have an honest objective to make a profit in their Amway activity. Petitioners operated this activity primarily because it allowed them to purchase discounted merchandise for personal use, and it enabled them to convert personal expenses to Schedule C deductions. Section 262 disallows any deduction for personal, living, or family expenses. Examination of their Schedules C for both years shows that they were not entitled to claim any deductions "otherwise allowable" pursuant to section 183(b)(1).

Moreover, because there was no gross income in either 1992 or 1993, petitioners were not entitled to any deductions under section 183(b)(2). In sum, petitioners were not entitled to any deductions from their Amway activity for 1992 and 1993.

In view of our holding on the section 183 issue, we need not address the section 162 issue.

Section 6662(a) provides for an accuracy-related penalty in the amount of 20 percent of the portion of an underpayment of tax attributable to, among other things, negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1). Negligence is defined to include any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue laws. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Moreover, negligence is the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Disregard is defined to include any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

Respondent also has met the burden of proof on this issue. Petitioner possesses an accounting degree, is a Certified Public Accountant, and has been a revenue agent with the Service for the past 10 years. Given his experience and extensive background in tax-related matters, it is apparent that petitioner failed to

exercise due care and disregarded the Internal Revenue laws when he claimed personal expenses as business deductions.  Therefore, we find petitioners liable for the penalties under section 6662(b)(1) for 1992 and 1993.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.